1984 EmeraChem Holdings v. Volkswagen Group 1984 EmeraChem Holdings, LLC May it please the Court. I'm Michael Bradford. I'm here on behalf of EmeraChem Holdings. And there are two basic issues here on appeal. The first being that the 558 patent should have been removed as a prior art in view of the Campbell Declaration. Inventor declarations can be used in numerous ways in patent cases. And one of those is to overcome a presumption against the declaration. So, for example, if you're overcoming a presumption of validity, the declaration must meet a clear and convincing standard. Now, other times declarations must only overcome a prima facie case to make a prima facie case evaporate. And in those cases, the declaration is only required to raise a question of material facts. And the Board, in its decision, used an incorrect legal standard in relying on the Woodland and Sand cases. Rather, in those cases, it required a clear and convincing evidence standard. Now, here, EmeraChem only had to overcome a prima facie showing that the 558 patent is prior art. Therefore, EmeraChem only had to put forward evidence sufficient to raise a question of fact that Campbell and Goode invented the subject matter cited in the 558 patent. What case is the best authority for you that an inventor can swear away a prior patent by a bare assertion through a declaration that he was the inventor of the relevant passages of that prior patent? Well, as far as the most factual analogous, there were several patent office decisions. Ex parte Morishita, ex parte Ava. Okay, let's put those to the side. Sure. And so really, the two CCPA cases at issue are Cass and the Bond. And if you look at the Bond, for one, it states that unequivocal declaration by itself, or unequivocal declaration is sufficient to remove a reference as prior art. Well, we could debate that. Is there a quote that you have that says that, an unequivocal bare assertion by the inventor that he is the inventor of passages 1, 5, 7, and 9 of the prior art patent is his own, and so therefore it's not by another? Well, it doesn't say a bare assertion is sufficient, but it also doesn't say corroboration is necessary. Well, it talks about it's an evidence-based inquiry, and based on the record in that case, the CCPA would satisfy it, right? And if you look at the record in that case, the Bond declaration is shown in the case. It says in paragraph A, I submitted, paragraph A says the drawing shows a device. Attached here too is an exhibit, which is a drawing, 73 days, 315. Correct. Right, so the inventor in the Bond attached a contemporaneous drawing from back in the day that Mr. de Bond had given to his patent attorney. But there's also nothing that suggests he created this drawing. Really what he's saying, it's another way of showing this is what I can see. For example, in a patent application, the specification can have words, and it can have a drawing. Whatever it is, it's something in addition to the affidavit, the exhibit, right? It is something, in addition to words, there's words in the drawing. It's something. It is, it is something. Now, but the NRA CATS decision has a declaration only. And there's an important distinction between the CATS and the Bond. Now, in the Bond, they explain… Then the declaration, you say declaration only, but in CATS the declaration has something in it in addition to talking about what was invented. It talked about the other people who were on the article were just students or whatever. Well… So, I mean, there's something else other than the declaration insofar as it affected the declarants' embedded contribution. But the de Bond case doesn't require explanation about the other inventors. I think what Judge Chen was pointing to is we have this case in which we have just the declaration that goes to the question of what part of the joint invention was invented. Nothing else. Nothing. And I think what Judge Chen was pointing to was in the Bond there is something else. We can argue about the significance of it. It's the exhibit with the drawing. And in CATS there is something else, which is the inventors' view of what these other people, not inventors, but other people on the article. So there is something else. Right? Well… Don't you think it's fair to look at both of those cases as declaration plus cases as opposed to bare declaration cases? Well, Your Honor, they're both simply declarations. No, I understand there is just a declaration, but the evidentiary record, because I believe that Judge Neese in both of those cases was pointing out this is essentially an evidentiary question. Right? Well, I believe… I don't recall what Judge Neese said about it being an evidentiary question. But the board relied on these cases for asserting that there must be documentary corroboration. There must be something else. That the bare declaration wasn't enough. There must be something else. Well… They talked about… And corroboration is a term of art in a way, isn't it? Corroboration means something else. Something else to support what is said by the declarant. Corroboration, though, is typically… When you think of corroboration, it's an independent showing. All DeVon did was take a drawing and said, I can see this. Campbell, in the same way, is saying, with words, here's what I can see. There's really… I don't see how that could be… I think we're in a quagmire over here on this side of the bench. We're trying to draw a straight line through all of our case law. Not only for this very specific, narrow issue, but as a general matter, with the inventorship doctrine. You understand the law, the inventorship doctrine. And you understand the Supreme Court, as at times in those very old cases, has been quite skeptical of an inventor's fair assertion without more as being something that's reliable. And now we have to look at the scenario we have in front of us here and try to understand the best we can the meaning of the message through DeVon and Katz. And both of those talk about how it's an evidentiary-based exercise. They just do. And neither of the facts in those cases can fairly be characterized as just being a bare assertion by an inventor declaring without any details or any story that he was the one, the true inventor, of the passages that he elects to cite as being his own. There was something more going on in each of those cases. It just can't be disputed. And so now we have to ask ourselves, okay, against the backdrop of inventorship law, which this is a very close cousin of, and the facts of DeVon and Katz, which in each situation there was something to borrow from Judge Clevenger, bare assertion plus. It wasn't just the bare assertion itself. But now we look at your case and we have the inventor basically saying, me and my co-inventor invented all of these passages, not the other two co-inventors listed on that patent, and full stop period, end of declaration. But, Your Honor, the MPEP and the Patent Office in several cases has taken DeVon and Katz to mean that an unequivocal declaration by itself is sufficient in very similar circumstances. Which era of the MPEP do you think controls this case? I mean, right now we have a current version of the MPEP that's, you know, at least at a minimum an adjustment of what it was back in the 90s. Well, Your Honor, here 103C was added in 1999. And in that situation, it has removed one of – any patent done by the same entity has been removed as 102E prior order. So actually, if this application had been filed three or four years later, we wouldn't even be here on this issue. So I believe the – and the Volkswagen and American Motor Group in their briefs, that they believe the mid-90s version of the MPEP would apply. In any event, even if it did, the briefing on the other side presents a story of why the outcome here by the board is consistent with the MPEP because what is going on here is not something that's disclosed but not claimed, but disclosed and claimed, which the MPEP, for whatever reason, is elected to, at least at one point in time, find a distinction on. So I think, you know, I don't know if the MPEP or any version of it necessarily helps you. Well, Your Honor, the disclosed but not claimed, I kind of see it as a separate issue. But they're – it's pretty clear if you look at the CFR and the cases that are talking about the disclosed but not claimed issue. They're discussing an instance where there's a first patent that has one claimed invention. And then if that same claimed invention is then claimed in the second patent, that's an interference type of position. I'm sorry, I've got another question. My understanding of the MPEP provisions were that the agency was trying to make a good faith attempt at interpreting DeBond and Katz. And do we give deference to the agency's interpretation of our own precedent? I believe, unless it's contrary to precedent, they do. But this disclosed but not claimed issue is not discussed in DeBond and Katz. Do you think the agency – we should give deference to the agency's reading of our own precedent? Oh, no, you shouldn't give preference, no. So I guess what I'm saying is if we were to conclude that there's an interpretation of our own precedent by the PTO through the MPEP that is an incorrect reading of our own precedent, then that doesn't have any persuasive value at all. Clearly the Federal Circuit would apply. But I do think it shows how other people have interpreted prior CCPA cases, so I think it's helpful to see. And the several patent office cases that have accepted the error declarations, I think that's helpful to see that that's the understanding of what those cases mean. And it's also important, DeBond and Katz were in a situation of – as I understand it, those were situations in prosecution, and there was an examiner, and he didn't have any way to depose or to contradict the testimony of this user.  Now here, there's a patent issue. There's presumption of validity. We're in a case where – This is an IPR, right? Correct, correct. I thought this IPR statute says there's no presumption of validity once the patent is brought back into an IPR. I could be wrong, but I'm not – I could be wrong on that issue. But there's definitely not any – there's not any presumption – well, there's not any presumption against Americount. And if you look, the board didn't really rely on DeBond in saying there's a documentary corroboration requirement. What they relied on was woodland and sand cases, and they used an eight-chapter test in woodland and sand for determining to give no weight whatsoever to the Campbell Declaration. But those cases involved where an alleged infringer was trying to show prior use and invention to overcome – to invalidate a patent. So they had to overcome the presumption of validity. And in that case, you have to show clear and convincing evidence. So those – Can't you have a situation where someone's trying to swear behind a record to say, I was earlier conceived and reduced to practice this invention? That would be – And if someone is making that – they're trying to avoid a piece of prior art being cited against it, right? Yes. It would be a similar situation to what we have here. Right. And the legal standard in that case would be what? It would require corroboration, right? The person who's saying, I – here, I believe that I was the prior conception and the prior reduction of practice, and I wrote down my declaration saying why it's so, that declaration wouldn't be worth the paper it was written on without corroboration, correct? But the conception of reduction of practice – I'm just saying, isn't that correct? I don't know that they're the same issue because here we're – I'm just saying, wouldn't you require corroboration? In that sense, of course you would. Yeah, I mean – Of course you would, correct. So then – and this is, I think, the adversary's argument. Why should it be different here? Well, because here there's this shifting burden of production. No, forget about that. As a matter of interpreting the law, what we're doing here is trying to decide what by and other means. How do you go about proving what by and other means? Is it enough for one person's just declaration to say, hmm, it was mine and then it was not by and other? So my question is why should the standard be different? The concerns rely on an inventor who has skin in the game, has a stake and whatnot, and maybe it was a long time ago when they said – there's similar concerns in case. Well, but all of these cases involve inventors that have skin in the game. I understand that, but in all of the skin in the game instances I can think of, we require corroboration. Well, I mean, here all Campbell's saying is he's presumed to be an inventor of the 558 patent. And he's just saying – In the joint patent, he's presumed to be the inventor of, well, of all – One claim. Joint and several. He's presumed to be the inventor of everything or just only a piece. So is everyone else listed on the patent. So is everybody else. But they're all presumed to only have invented something. There's not a presumption they've invented everything. It's hypothetically possible in the 558 case that your client invented stuff that's not in the suit, and it was somebody else, his co-inventor, invented all the things that are in this suit. But he swore under note that he did invent everything in the suit, and there's nothing to contradict that. He didn't swear that he didn't invent everything else that's in there. You can have joint inventors who have all of them invent everything. But he said solely. He said Campbell and Goode solely invented the subject matter. I mean, he swore under note. There's nothing that challenges the Brasket separation. And so I've gone over them. You want to hear them all at the same time? Why don't we hear from the other side? Ms. Lynch. Oh, no. Who's first? Mitchell. Steve Meyer. Oh, okay. I'm sorry. I just listed the wrong order on my sheet. Good morning, Your Honors. May it please the Court. I am Stephen Meyer on behalf of Appley Volkswagen. The Campbell 558 patent is a prima facie prior art to the Challenge 558 patent under Section 102E. How did you get around Devon and Cass? I don't get around Devon at all. I get around Cass, but Devon is in our favor. In Devon, the – I mean, we're bound by Devon and Cass, right? You agree with this? Yes. What was it then in Devon that you think is in your favor? The Court explained that the question of whether appellant is the sole inventor was properly raised by the PTO, and it was incumbent on appellant to provide satisfactory evidence in light of the total circumstances of the case that the reference reflected in this work. And there – And what was it that the Court held satisfied that requirement in Devon? It was the declaration itself plus the drawing that was annexed to that affidavit, to the declaration. Do you have the Devon case handy? Can you open it up, please? Yes. Okay. So the opinion begins, and the opinion, Roman numeral I, right after it, tell me when you found where I am so we can follow along with each other. Yes. Okay. So number one is just general statement. Number two talks about the board. Number three, Roman numeral III, all on the same page, it's a very short opinion, luckily, is where we really see the discussion of both tax in particular and what is sufficient to establish the sole inventorship. Following the word opinion, is there any place in the opinion itself that discusses the drawing that was attached? I'm going to help you out because there isn't. The word drawing doesn't actually appear in the discussion about it. Instead, following where they discuss tax, they talk about the affidavit and how in a different case, FASCIA. The inventor didn't say in the affidavit he clearly both conceded and reduced to practice. So the problem with that other affidavit wasn't a lack of corroborating evidence, it was a lack of a clear assertion in the affidavit itself, which is viewed as evidence. So nowhere in the opinion of the court do they reference the drawing. Have I missed anything to your knowledge? Yes. What have I missed? The sentence that states, on the basis of the record here, which includes appellant's unequivocal declaration that he conceived anything, blah, blah, blah. Right, so it doesn't mention the drawing, right? It just says, on the basis of the record here, which includes this declaration saying he conceived it. It includes the record. So it's based on the record and the record... Hold on, hold on, I understand your point. You're making a generalized statement, but let's go back a page. Why don't we look at footnote number five? Why don't you read footnote number five out loud to us? I'm surprised nobody cited it. Why don't you read footnote number five out loud? We do not consider it necessary to include drawing number 73-315. And as the board explained, the reason that it wasn't included, it wasn't necessary to reproduce the drawing in this opinion. Not that they're not considering it. If that was addressed in the board's decision in our case, they explained that the drawing was not included in this opinion. Not that it wasn't included in the record. So you don't, when you say, we do not consider it necessary to include drawing number 73-315, help me out because I don't know the facts as well as you clearly do. Are you saying that that is a quotation from the board? No, that is a quote from the court here, the CCPA, explaining that they didn't reproduce the drawing here. We as the CCPA. That's what I thought too. So when they say we don't find it necessary to include this drawing, I should interpret that as a conclusion by you that they didn't think it was necessary to solely reproduce it in the opinion, but it was nonetheless absolutely necessary to the outcome of the opinion, even though after the sentence it says, we do not consider it necessary to include the drawing. They never mentioned the drawing again, anywhere in the opinion or in any portion of the analysis that led them to conclude the affidavit was sufficient on its face. That's the interpretation you would have me give that sentence. Yes, the drawing here. Never mentioned again. After they said we don't need to include it. The drawing that is shown in the case comes from the patent. They say that it is the same. And then they have a footnote that says that they don't include it. It's not necessary. And then in the entire portion of the analysis of why the affidavit was sufficient, they never mentioned the drawing. Never. Words don't appear. And yet I'm supposed to conclude that in the context of a PTO-based proceeding, where there is actually a presumption of inventorship that attaches based on assertion and declarations that are filed, that when an affidavit is included that articulates portions of things that were invented by one person or another, that's not enough. Even though in this case, it was clearly enough. And this case never mentioned the drawing anywhere. It does mention the drawing and it mentions the date of it. Do we make anything of the fact that the opinion in quoting the affidavit has a description of what's in the drawing? Yes, exactly. Attached to your case is evidence of drawing, which illustrates a velocity profile development of the yada yada, and the yada of the drawing shows this, that, and the other thing, yada yada yada. So the opinion of the CCPA contains a description? Yes. And that is consistent with what I said earlier and also what the board in our case explained. In the opinion, it says that the drawing wasn't included in the CCPA. That's in the opinion where we did it? The opinion that is on appeal, yes. Just to be clear so I understand, the portion of the opinion that Judge Clevenger read isn't actually the opinion, is it? It is the quotation of the affidavit. Isn't that right? It's not the opinion. The CCPA didn't say that. They block quoted Mr. DeBond's affidavit and included it in the background section. I just want to make sure we're all on the same page so I'm not missing anything. Is that right? Yes. So you think DeBond helped you. Then tell me what about Katz helped you? Before I address Katz, I would like to point out two other board decisions, the Ethicom case and ex parte Boris Rubinsky where they reached the same conclusion about DeBond, that DeBond's drawing was the corroborating evidence. Okay. In Katz, what was the corroborating evidence? The corroborating evidence was the declaration explaining the work of students as being authors. But that's not corroborating evidence. That's just further assertions within the declaration. Right? How is that corroborating evidence? It's just the declaration itself and every one of those statements is an assertion by the author. Yes. But there, the difference is that it's not a patent. And the CCPA explained that distinction. In Katz, it was an article. And the authors are not presumed to be inventors of what is disclosed in there. And it says to be anticipatory of the application. So you're saying thus, because it's not a patent, but rather a publication, corroboration is not required? Higher, more corroboration is required when you have a patent and you're disputing the named inventorship on the issued patent. Okay. So I just want to make sure I understand the rule of law that you're asking us to adopt. If it is a publication with multiple authors, a declaration alone with a good story in it by the author is sufficient on its face, can be sufficient on its face. That is what Katz said. That identical thing would, in your view, not be sufficient if we're talking about a patent, which is the prior art. Correct, yes. Because there is a presumption of inventorship attaching to the named inventors on the Campbell 558 patent. And in fact, with respect to… I think another way of putting it is that Katz doesn't so clearly say the latter. I mean, Katz does say the co-authors may not be presumed to be co-inventors merely from the fact of co-authorship. And so what Katz is telling us is that, at least for articles, and when there are numerous listed co-authors, there shouldn't be a presumption that each co-author is an inventor of every little concept that's contained in this article. Correct. But Katz doesn't take the next step and say, what do we do when it's a series of listed co-inventors for a patent? There's an implication there that maybe with a patent, it's attached to certain legal rights, and when you have a bunch of listed co-inventors named on this legal right, that maybe there should be a presumption that the default is that they all share rights in everything that's been invented, and because they were co-inventors of that. Yes, in the Hess case, there is a presumption of inventorship attaching to the named inventors on the patent. And for consistency, I'd like to point out that this court requires corroboration of oral testimony for joining putative co-inventors under Section 256. Just so you know, I don't think that's a bad rule of law, but I'm just wondering if I'm bound by certain earlier cases that establish a slightly different application in this unique context. And that's what I'm trying to figure out. I have no problem with corroboration as a necessary component and can see the value in it, so I understand why you're bringing those cases to our attention. It's just that those contexts are a little different from this one, and I'm bound by everything the CCPA did before, and those cases seem more on point to me than the other side. I'm wondering if you even, to prevail here, do you even need a strong corroboration requirement for these arrangements where someone's trying to swear away from a reference by claiming that he was the sole inventor of the relevant passages of that prior reference? Because what happened in Katz and DeBond, at a minimum, were declarations that were filed that had at least some story attached to it. And it was more than just a conclusory assertion of being an inventor of certain relevant passages at least. In DeBond, Mr. DeBond goes through the story of how he developed this drawing in the early 1970s and then submitted it to his patent attorney, and he described that in the declaration in efforts to get a patent, the first patent, of which he was a co-inventor with someone else. And then so that's his jumping-off point to claim that that relevant part of that earlier patent was really his and his alone. Same thing with Katz. Maybe we could debate whether this is a wise move or precedent to say that a co-author can basically disclaim his co-authors from an article by saying they were just students. But apparently we said that was good enough. In any event, in both situations, there's a story contained in the declaration. In both cases, we have CCPA decisions saying based on the evidentiary record in the case, these declarations were good enough. Yes. And if you look at it from the sufficiency of the evidence standpoint, Judge McKelvey below assessed the evidence and found that it was insufficient. Okay. That's an evidentiary finding. I'd like to ask you, we don't have much time left, so please turn to whether or not there was notice and comment, the Claim 3-16-20 issue on whether or not it was proper for the Board to rely on the Stiles reference for the rejection ultimately of those three dependent claims. Yes. Stiles was mentioned in our petition. I've read your petition, and I have it handy here. So when I look through your petition with regards to Stiles, it is mentioned in the abstract with regard to Claim 1. It is never mentioned with regard to Claims 3-16-20. In fact, we provided a very helpful, I think I and certainly the Patent Office always find it helpful when people give us claim charts because it helps us understand exactly what and within what you're saying is pertinent. You provided a claim chart on page 54. Let's just start with Claim 3. You say that Claim 3 is obvious based on Campbell and Sayeto, and you actually tell me which portion of Sayeto you think discloses the carbon dioxide gas. So do you ever anywhere in your petition mention that Stiles is a reference that could be used to provide missing dependent elements from Claim 3? We included it in the body. Where? Because everything I found on it was with regard to Claim 1 only. So where did you include it for anything other than Claim 1? Okay, on page Appendix 114. Appendix 1-14 and 16-20 are obvious under Section 103A over the combination of Campbell and either Baroda or Sayeto in view of Stiles. Yes, that's the general statement. And then immediately after that you have a very detailed claim chart that tells me in particular which of those four references apply to which of the individual claims. I would point to the Clozo case where it was Claims 10, 14, and 17 were instituted, and Claim 10, the claim chart, had no mention of evidence of when, and Claim 14 had the claim chart. The detailed claim chart had no mention of when. But that was different because then the institution decision did. Here the institution decision doesn't either. Let's turn to your institution decision. The institution decision follows your claim chart. And my problem with the institution decision is on page 21, page 19, 20, and 21 is where it goes through and tells you which claim and which particular references it is instituting on with regard to each of those claims. Now, Ground 4, which is the order instituting on Appendix 177, says Claims 1 through 14 and 16 through 20 of the 758 patent is likely unpatentable under Section 103 over Campbell, Haroda, Sayeto, and Stiles. Here's a concern that is potentially there for you. It's that when on the prior pages the board goes through an itemization of all the dependent claims and then cites the specific record locations for supporting the limitations of the dependent claims. For the relevant ones here, 316 and 20, we don't see any reference to Stiles. We see references to Sayeto. Then did you file a petitioner's reply in this case? Yes. In your petitioner's reply, did you, for either Claims 316 or 20, cite to the Stiles teaching of water vapor and carbon dioxide, or in your petitioner's reply, did you cite exclusively just to Sayeto for those claims? We addressed the argument that Americam raised in its opposition. No, I understand, but can you answer my question? My question is, for these claims, did you cite to Stiles for teaching these limitations regarding carbon dioxide and water vapor? No, we did not, but the board did. Also, I point out the question is due process. They did have due process. Americam, in its response, said that the combined teachings of Campbell, Aroda, Sayeto, and Stiles failed to render the challenged claims plural obvious. So they understood that it applied across the board. Also, what do we make of the itemization of all the dependent claims that are in the institution decision where the patent board said, here, for each one of these claims, here's the portion of the record presented to us that we are using to match up against the limitations in those dependent claims. Do we dismiss that? Do we pretend it doesn't exist? Well, in the Genzyme case, this was expressly addressed. There, they said that the final written decision was not limited to what was pointed to in the institution decision, and that is at 825 F3, 368 to 369. That's because there was further argument development in the course of the PTAP trial there. And here, when we look at the course of the PTAP trial here, as far as I know, it's all silent with respect to Stiles' relevance in terms of these particular dependent claims, 316 and 1. Is that fair to say? Okay. Yes. But what I would like to point out, and this was not addressed in their brief, Stiles says that the generation... I'm sorry, Sato says that the most preferred regeneration gas is hydrogen, which can be diluted by nitrogen. Stiles says regeneration gas is hydrogen in nitrogen. Both carbon dioxide and water vapor can also be pressed. Stiles discloses the same regeneration gas as Sato, but further allows for the inclusion of carbon dioxide and water vapor. So it's not a switch and swap, not take one element out of Sato and put an element in Stiles. It is right there. And this provision in Stiles that says further includes carbon dioxide and water vapor was in our petition, in the body of our petition. Yes, but to be fair, again, you didn't rely on that key sentence from Stiles to match up with Claims 360 and 20. You were using Stiles as a basis for a motivation to combine the primary Campbell reference with Naroda. The motivation to combine was a separate sentence from Stiles, not the one that says that the regeneration gas can further include carbon dioxide and water vapor. And in fact, we laid it out and then said it further includes. That sentence was included in the institution decision and it was also included in the final written decision. So remember... Here's the problem. When you look at your petition at page 59 and you're talking about Claims 17, you point to each of the references that you think contribute. Sato, Hiroto, and Stiles. And you quote from Stiles and you say why. In the institution decision, the board parrots your petition identically with regard to Claims 17. And then, of course, in the Patent Office's response to all of this, when it discusses Claims 17 at page 231 and 232, they go through and explain why Stiles doesn't, in fact, disclose what they think is being disclosed. Now, the board's found against them, ultimately. But they knew what they were shooting at because your petition cited Stiles for this proposition, the institution decision cited it for that proposition, and then they addressed it. I guess my problem is you didn't cite Stiles for these other claims in your petition, the institution decision didn't particularize Stiles for those claims either, and then they didn't address them, and you didn't address them in your response, and then all of a sudden the board doesn't find for you, in light of Sato, they find for you on an alternative ground, Stiles, which feels to me like nobody saw coming. Well, I'd like to point you to the institution decision at APX 0168. There, the board says, What page 11 is this? It's appendix 168. 168? Yes, which is page 13 of the institution decision, and it reads, This is under the header, Differences Between Subject Matter and Claim 1 in Campbell. Correct? Yes. Under the header, Differences Between Subject Matter and Claim 1 in Campbell. Okay, go ahead. Yes, and it reads, The combined teachings of Campbell, Haroda, and Stiles fail to render the challenged claims obvious. So the board I'm sorry, you said 168? I'm sorry. I'm sorry, 168, I read the wrong thing in my notes. Haroda, Sato, and Stiles likely overcome any differences between Campbell and the subject matter of Claim 1 of the 758 Act. Yet, if you go to the I'm sorry. If you go to our point chart, Stiles is not cited in the claim chart for Claim 1 yet. Isn't this a boils right down to a specific arrows for specific targets issue? I mean, in this process that you're playing, you have a specific proposition you're trying to establish with a specific target. That's a target. You have a specific arrow, i.e. a pair of rubbers that you're throwing at it. And what you're saying is that a Yes, and we're saying Does that sound right to you? That is what they think. You could just say, well, Stiles, we cited Stiles. So whatever Stiles teaches, the board, the judge later on should be able to say, well, ooh, I found some things in Stiles that nobody argued here, and I'm going to render my decision based on that. The response to that is this is not something that nobody pointed to. The quote appears in our petition. But the specific target, the reason why you were using Stiles, the reason why the board ended up using Stiles, right, was not something that you had identified that you thought they should be doing. We identified that section in general. In general. It's a gen-sign case. It said that the general's discussion is sufficient and that the final written decision does not have to, is not limited to the specific portions of the reference that is cited or quoted in the institution. Okay, we are way over your time. I promised the PTO some time, so let's give them a chance. Thank you, Your Honor. Great. May I please report? Can we just start with the notice issues? Sure, we can start with the notice issues. So I agree that the gen-sign case, this isn't a case where the board changed references. This isn't a case where the board suddenly relied on things that it had never cited. The board cited this in its institution decision. The petitioner cited this in its petition. Cited the patent. Cited this exact disclosure that the board ends up relying on. And the gen-sign case in footnote 4, they are – Cited the disclosure for what purpose, for what proposition? I agree. They didn't specifically tie it to a limitation the way that they did in their claim chart. So it's not tied, but it is there. So AmeriCAM was put on notice that these disclosures were in play. I guess the question for us is, if you block quote passages from a prior art reference with respect to Claim 1, and then the board institutes on Claim 1, but it also institutes on a bunch of dependent claims, and then doesn't rely on those block quotes from that prior art reference that was relied on for Claim 1, should we believe that those block quoted passages for Claim 1 should also be a live issue with respect to all these dependent claims where other portions of the record were relied upon for purposes of the institution? Let's just say that's the way we read the institution's decision. Okay. I agree that they are block quotes, but they're specific block quotes. It's a long patent. You know, I guess maybe it's a hypothetical that I'm asking, right? If a passage from a reference is relied upon for grounds of unpatentability for Claim 1, but it's not ever pointed to or cited for dependent Claim 20, then is the board allowed to use those passages that are relied upon for Claim 1 that just happen to be also useful for Claim 20 in a final written decision, even though the institution decision doesn't make any reference to those block quoted passages from the reference? We think so, Your Honor, because they are cited. The patent owner was put on... Wouldn't it be more likely if it was the same element? The difference, the part that's bothering me, Ms. Lynch, is quite frankly, Claim 1 is, what, hydrogen? I'm not going to get them right. One of them, I think it's three, is carbon dioxide. One of them is water vapor. It's not the same element at all. And so you have a block quote from Stiles in the section saying Claim 1, and it happens to include a discussion of both hydrogen, carbon dioxide, and water vapor, but you're only citing it and, in fact, you italicized it with regard to hydrogen because that's the element in Claim 1 that it was relevant to. Why would the petitioner or the patentee be unnoticed that that reference is also being instituted with regard to Claim 3's very separate element of carbon dioxide? If I'm getting them wrong, correct me. I know the facts are not crystal clear in my head, but I think it's carbon dioxide. So why would the patentee be unnoticed that the thing you cited, which happens to also say carbon dioxide in it, I don't have a dispute over that, is nonetheless what you're importing into the Claim 3 analysis? It was the same element. You know how, like, the same element appears in lots of claims, worded ever so slightly differently sometimes, but it's the same element. This isn't the same element. It's a different element. Because the petitioner picked this out. It clearly discloses it. Americans doesn't dispute that it doesn't disclose this. So they pick up this block quote. They put it in there. Maybe it does teach multiple limitations. They were unnoticed that Volkswagen had picked out this block quote. They thought it was relevant. Even though Volkswagen only said it was relevant with regard to Claim 1, because the entire analysis is under the header of Claim 1. So even though in the petition it's only articulated as relevant to Claim 1, we should nonetheless assume because it happens to also read on dependent limitations that it's nonetheless relevant there. The heading is for all of the claims. I don't know why you're saying it's just Claim 1. Maybe I'm missing something. But the section of the petition that it's in begins at 114. And it's for all of the claims. Oh, I'm sorry. You're talking about... I'm talking about the text where they put these block quotes in the petition. And we agree with you that they don't put this in their claim chart. But it is in the text where they're discussing the disclosures of these, of Carota, Sato, and Stiles. Even though for some of the claims they expressly put Stiles in and for others they don't, nonetheless, I should assume it's actually relevant to all the claims? Well, it's in their general discussion. Like I said, it's what they selected to talk about. They have a limited amount of space. This is what they selected to tell the board about. The board thought it was important enough to put it in its institution decision. America doesn't dispute that it teaches it. No, no. What do you think would be a good rule for patent fees in general when confronted in ICR? There's a general discussion with the Americans at the front, but then there's a claim chart. It goes claim by claim, element by element, especially when you're talking obviousness. Just to let you know, there can be 10 references. And sometimes there's a general statement. Various combinations of these 10 references render all of the claims obvious. Various combinations. And then a patentee gets a claim chart. They got a claim chart from the petition, and they got a claim chart from the board. And neither of those claim charts use Stiles at all with regard to specific claims. And then if the patentee had recognized what you're saying, maybe they should have recognized, you would think you would then see them fighting Stiles in the petitioner's response after institution, which they don't do. And if the petitioner did intend to use Stiles like you thought, you would think you would see them mentioning Stiles in the briefing after the institution decision. None of them do, except with regard to Claim 17, which is the only claim chart it appears in. So forget about this case. As a rule of law, what puts a patentee on notice as to what the board has instituted on? Do we want to say a generalized statement with some general discussion at the outset or at the end is enough, when there are claim charts present that go item by item like this? Is that a burden we want to introduce, given that, as you recognize, the limited page numbering, the speed with which the process moves forward, and all of that? I'm not saying these are good claims. They might not be. But from a notice standpoint, what should the patentee have done? Can I answer? Don't worry about the time. You're being very helpful for the board. I feel like the Gensum case kind of answered that. But doesn't Nuvasiv sort of... But Nuvasiv was the case, right, where something new came up in the reply and the party tried to ask the board if they could put in rebuttal evidence and the board said no, right? So that's what that was about. Suppose I don't think Gensum answers this. Suppose I don't think that. You tell me from a policy standpoint, what makes good policy here? So obviously there has to be notice. I think notice can be given in different ways. It doesn't have to be through a claim chart. Claim charts aren't even required. They're not required, but when they're given, don't they focus everybody on what the understanding, especially when there's a large number of references and a limited number of pages? Doesn't that sort of almost trump everything else in terms of focusing everybody on which references are relevant to which claim? The board didn't think it trumped everything else here because Volkswagen picked out this disclosure and it clearly teaches it. So I think you have to look at everything in the petition. And Gensum, I know maybe you don't think Gensum is particularly on point, but Gensum talks about when something is in play. And I think by quoting those disclosures, they were in play. And I know you wanted to and were prepared to, and I'd actually like to hear you, if you don't mind staying a little longer. I would like to hear your thoughts about the first issue that we discussed, which is the issue of corroboration. Right. So it's our position that Americans did the bare, put in a naked assertion. All they did was... What's the agency's articulation of the rule? The agency's articulation of the rule in the NPEP... Well, you came prepared today to give us the rule. What's the rule? The rule is it's something more. And you can see that from the board. The board didn't necessarily say you have to have a document or you have to have a story. You can see the board is talking about there has to be something more than this naked assertion. Basically, all they did was take the quotes from Volkswagen's petition and say, you know, me and Guth solely invented this, and Guth has said. So they didn't give any story, any explanation. They didn't attach any documents. And I think in Woodland Trust, the board says it's a rare case when there wouldn't be any documents. So the owner of the other, of Campbell 558, it's hard to believe that they didn't have any. Do you agree with the distinction argued for by Mr. Meyer that Katz is different because there, there wasn't something more? There might have been a story, but we can all tell a good story. If a story is still in a declaration, it's still just a story, you know? So do you agree with him that stories are okay when it's a publication that you're delineating as between, but definitely not for patents? Is that the line that you would think is right to draw? Not necessarily. I think Katz says definitely the story was enough for a publication. We do think, based on the MPEP, that when something is claimed, there has to be a higher standard, and that's why the MPEP says when you're relying on plain subject matter, you have to talk about what those other inventors did. So we do agree that when the reference is a patent, that there is, and it's claimed, that there is a higher standard. But, you know, we didn't say what you necessarily, we're not arguing for a bright line test. So is your view if it was disclosed in the patent but wasn't part of what was claimed, what they did here would have been sufficient? Not necessarily. I wouldn't say that, but... Isn't that what the MPEP pretty much concluded? Well, the MPEP has provisions about disclosed, not claimed. Which version of the MPEP, if the MPEP were applicable, and we were required to give it meaning in this decision, which version would we talk? We think the current version applies because they're putting in the declaration now. And the MPEP clearly says that if it is... This declaration would fail under the current version. It would fail. It also fails under the earlier MPEP provisions as well because all of those... Your position is that the current version applies. That is... Okay. Secondly, in terms of the burdens of going forward production as well as the burden of persuasion, the burden of persuasion here is on the challenger, correct? Correct. And in terms of this particular question of buy another, the fact that the patent, that they're trying to serve as a joint patent, the challenger met its burden to shift the burden of production over to the patentee, correct? Everybody agrees with that? Correct. The effect of the board's decision of what you're asking us here to do is to give zero weight to the inventor's affidavit. Zero weight is not evidence anymore. It's gone. It didn't meet their burden of production. It's correct. No, it doesn't qualify as evidence. If it qualifies as evidence in any way, shape, or form, right? It would have to raise the material fact. Well, raise the material issue. Right. And so you're saying, unexplained, a bare assertion can't meet that test. I'm just looking for what that rule of law has to be because we're seeing this in a burden shifting in this particular setting. We know that the ultimate burden of persuasion never moves off the challenger. Correct. But as it turns out here, as a result of the operation of the burden of production, the burden of persuasion has shifted to the patentee. And he lost. Well, he didn't satisfy his burden of production. But in dynamic drinkware, wasn't there an amount of evidence put forward by the patentee to get the ball moved back in the other direction? Correct. Correct. So it shifted back in dynamic drinkware here. It never shifted off the patent owner because their declaration was deficient. OK. So if we were to adopt your rule, why wouldn't the correct result be, well, from your perspective, there is nothing going for the patentee with his declaration? So the game is on. Correct. He was not able to shift the burden back, the burden of production back. What is the origin for, I guess, the PTO's position that when something is disclosed but not claimed in a patent, there's some kind of lesser requirement? I don't even know how to begin to articulate it. But there's some lesser requirement. And then when it's disclosed and claimed, then there's something more required than the situation where it's disclosed but not claimed in a patent. Because if you look at the reference patents, the inventor signed an oath saying that they contributed at least some subject matter to at least some of the claims. And the idea is if someone is going to come in years later and try and rebut that and say, well, I'm the one who claimed claim one, that they need to make more of a showing because there's already oaths on file saying that these four people, in this case, claimed something. So they have to make a showing under the MPEP to show what those other people did as well. And what's your best authority that you have for making this distinction, whether it's a case or something else? Precedence? I think the MPEP just relies on, I don't think it relies on a specific case to say that. I mean, I think they discussed the bounds, but I don't think that's exactly what happens with that one. And can I just point out one sentence into that? And then I realize I'm so over time. But this paragraph that you talked about it in fascist, which is the? Yes. Seizure ban is a bond. Yes. So the last sentence says, in contrast, appellant's declaration here states that he originally conceived the basic equalizer honeycomb section disclosed in the 678 patent and in drawing 73315. So I would say that they were, in their opinion, relying on that drawing. And the concurrence talks about the drawing as well. It talks about other facts supported by exhibits, which justify the conclusion. Yeah, but the majority certainly didn't. I didn't see them as relying on it. But thank you for pointing that sentence out to me. If the court has no further questions. Thank you. Mr. Bradford, we're going to give you your six minutes of rebuttal time. And we're going to hope we can keep it to that. But they went so far over that if you feel like you really need to stand here longer, at some point I'll make you sit. Thank you. I'll do whatever you want me to do. All right, we'll see you later. Well, hold on. But starting with the Campbell bond issue, we've discussed this a lot. But I think Kat's important. You know, there's this discussion of this story because there are several co-inventors. But Kat's explains why they wanted to see this story. They say, what we have in this case is ambiguity created by the printed publication. The article does not tell us anything about specific inventorship. So they wanted this declaration to explain an ambiguity. I think the patent that the CCPA wasn't comfortable with, what does it mean to be an author? The same type of ambiguity clarification is not required in the bond. And this wasn't decided because they showed a story. Kat's wasn't decided this way. It's because they explained an ambiguity. But in the bond, they didn't have to explain the same ambiguity because there is evidence that they are inventors. When I think about Kat's, I'm wondering if you really have two separate hurdles you have to deal with, unlike the bond. The bond, the inventor is trying to swear away from passages of a patent. Kat's was trying to swear away relevant passages of an article. And so I saw our opinion, or CCPA's opinion, talk about how when it comes to an article, we shouldn't be so quick to presume that co-authors are really inventors of all that is contained in an article. An article is just a different situation. And who you designate and label and identify as an author is not the same exercise that one goes through in identifying and labeling someone as a co-inventor for a patent. And so I guess what I'm wondering is maybe there is something to it, what the agency is getting at, that perhaps in a Kat's-like situation, the agency or the law shouldn't require something as stringent in terms of trying to swear away the passages of an article compared to when someone is trying to swear away passages of a legal document, like a patent. Can you explain what you think about that? I mean, I think it's actually the opposite. If Kat's was trying to swear behind another patent, I believe they didn't need this extra explanation. I don't think there's any. Devon actually states very explicitly that the 678 patent is silent with respect to who invented the honeycombing section itself. And we do not presume that it is the invention of Appellant and Knoll jointly or either of them. So there's no presumption that they both invented everything. And the board's not saying there's some presumption to overcome here, or the CCPA. What they're saying is there is no presumption. We just understand he's an inventor. That's the presumption. And so he's explaining, he's just telling us what's in line with that prior explanation. I'm an inventor. I'll tell you what I invented. And there's no contradiction to that. I think that should surely be enough, especially just to raise a material question of fact. I mean, cases all the time are found to have material questions of fact based on testimony alone. But so I believe, I don't believe, in the drawing there is not corroboration. It was that he had to show evidence, I believe, in production to practice. But there was a statement, I believe, in the prior discussion that Devon explained that he developed this drawing. But he doesn't ever say that. He doesn't say he developed this drawing. He's putting it in and says. Well, you think it has to be enough to raise a material question of fact. What's the difference between that and the PTO saying,  with no corroboration, as a matter of fact, simply doesn't convince us. It's almost like you want everything, it's almost like it has to be an everything or nothing conclusion. Can't let, could the PTO do that? Could the PTO say, based on this record and nothing else, that you know what, this declaration, while it is evidence, and we consider it to be evidence, it just doesn't convince us. It's an interested party, many years after the fact, claiming what he invented, his co-inventor's dead, so there's nobody to challenge him. We consider it to be not enough. Could they have made that fact finding? Well, the factors they decided upon, I think they could have made it in the drawing. But, I mean, they did find, I'm sorry, that they came across wrong. I don't think that would be correct, because it's based on an incorrect set of factors. The factors they're relying on are from this woodland and sand line of cases. And there, there was a presumption they had to overcome. But just to put a finer point on the question from the court, it's that you were saying that this declaration should be considered something that's enough to create a triable issue or a fact or something like that. Correct. And really, in the end, we're at the end game when the board issues its final written decision. And it's got to reach a result right there, make a final choice. And it could say a couple of different things under this scenario. One is, this evidence did not shift the burden, because it's not really evidence of anything. Or, to the extent that it's evidence, it's of such low quality, it's not enough to shift the burden back. The alternative is to say, we take into account your evidence of this declaration. And then we go back and look at the Prima Fasci case, that this is good prior art. And in the end, when we look at all the circumstances here, time has passed, everything else, we make a finding on this record that it's good prior art against these claims. So it kind of takes away the so-called burden of production shifting framework and just reaches a final conclusion based on everything that everybody's presented in the case on whether or not this reference should be considered a 102E reference. Well, Your Honor, the way the IFAR proceeding works, after they make their Prima Fasci case, then we have a chance to present our response. And then they have a chance to put in a reply. So they have a chance to try to contradict this. But they don't need to. Maybe the evidence is of such a weak nature that it doesn't need to be contradicted because the Prima Fasci case alone is enough and that this doesn't overcome it. Well, and I understand the Patent Office prior decisions maybe not be binding in view of Devon and Cass, but there's several of these cases that explain an unequivocal declaration may not be enough, but it is if it's uncontradicted. And that's what they say. And I think it's reasonable for a patent owner to follow that guidance. It's repeated in the NPEP. It's repeated in several places. And it's, in my opinion, in line with Cass having an unequivocal declaration. It doesn't state that... Devon doesn't state there's documentary corroboration that's needed. And the board said there is no documentary corroboration. And the board said, well, this isn't an interested inventor. Well, Cass and Devon are interested inventors. All these cases are interested inventors. I mean, why else would they be put forward? Okay, well, we're well over our time. Do you have a final thought, or are we good to go? Well, Your Honor, briefly, I think you're correct on the styles issue. It's in... I don't think we need to go down that road right now. I think we're good. We have your arguments in your brief, and I think we're good. We thank both counsel, or all counsel, for their persuasive oral argument. It was very helpful to the court. The case is taken under submission. Thank you.